# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 17-2226 JGB (SPx)** | Date | December 7, 2017 |
|---|---|---|---|
| Title | ***Grant Fritsch v. Swift Transportation Co. of Arizona, LLC*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 14); (2) REMANDING the case to state court; and (3) VACATING the December 11, 2017 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Grant Fritsch's Motion to Remand.  ("Motion," Dkt. No. 14.) The Court determines this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion and REMANDS the case to state court.  The December 11, 2017 hearing is VACATED.

## I.    BACKGROUND

On August 30, 2016, Plaintiff Grant Fritsch ("Plaintiff") filed his third amended complaint for a putative class action against Defendant Swift Transportation Co. of Arizona, LLC ("Defendant" or "Swift") in the Superior Court for the County of San Bernardino.  ("TAC," Dkt. No. 1-2.)  Plaintiff brings this action on behalf of himself and similarly situated employees who worked for Defendant "in California between December 7, 2011 and the present as yard hostlers, [and] who do/did not cross state lines in performance of their duties."  (TAC ¶ 8.)  The TAC advances multiple claims: (1) failure to pay wages, (2) failure to provide accurate wage statements, (3) violation of California's Business and Professions Code §§17200, et seq., and (4) violation of the Private Attorney General Act ("PAGA").  (See TAC.)

Swift removed the action on October 31, 2017.  ("NOR," Dkt. No. 1.)  Defendant argues the Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA").  (NOR ¶ 23.)

Plaintiff filed the Motion on November 10, 2017. (Dkt. No. 14.) Defendant opposed the Motion on November 20, 2017. ("Opposition," Dkt. No. 19.) Plaintiff replied on November 27, 2017. (Dkt. No. 20.)

## II.  LEGAL STANDARD

Federal courts have original jurisdiction under CAFA where the number of proposed plaintiffs is greater than 100, there is a diversity of citizenship between any member of the class and any defendant, and the amount in controversy is more than $5,000,000, exclusive of interests and costs.  28 U.S.C. § 1332(d); Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015).  In determining the amount in controversy, courts first look to the complaint.  Ibarra, 775 F.3d at 1197.  Where damages are unstated in a complaint, the defendant bears the burden of proving the amount in controversy is met.  Id.

Though a notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, when the amount in controversy is contested, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 550 (2014).

Generally, courts must "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  However, no anti-removal presumption exists in cases invoking CAFA.  Dart Cherokee, 135 S. Ct. at 554.

## III.  DISCUSSION

The parties do not dispute CAFA's jurisdictional requirements of minimum diversity and class numerosity.  Plaintiff moves to remand on the ground that Swift failed to prove the amount in controversy exceeds the $5 million jurisdictional minimum. (Mot. at 5.)  Plaintiff also argues Defendant waived its right to remove her class claims. (Mot. at 6.)

### A.  Waiver

Plaintiff argues Defendant could ascertain the removability of Plaintiff's class claims "as soon as it was served with the pleadings." (Mot. at 7.)  In addition, Plaintiff asserts both parties have engaged in discovery for more than a year and taken depositions, therefore Defendant has waived its right to remove the case by participating in the state court proceedings. (Mot. at 8.)

Under 28 U.S.C. § 1446(b), a defendant must file a notice of removal within 30 days from (1) thirty days of receipt from plaintiff of an initial pleading, or (2) if the initial pleading does not clearly indicate whether the case is removable, from receipt of an amended pleading or some other document from which it is ascertainable that the case is removable.  28 U.S.C. § 1446(b). However, a defendant "does not have a duty of inquiry" if the initial pleading or other document is "indeterminate" with respect to removability.  Roth v. CHA Hollywood Medical Ctr., L.P.,

720 F.3d 1121, 1125 (9th Cir. 2013).  Thus, a defendant does not lose the right to remove because it does not conduct an investigation and file a notice of removal within thirty days of receiving the indeterminate document.  Id.

Here, Defendant claims none of Plaintiff's amended complaints were determinate of the amount in controversy.  (Opp'n at 29.)  Defendant argues the first document they received that provided notice of the removability of the claims was the October 18, 2017 damages chart Plaintiff produced.  (Id.)  The Court agrees Plaintiff's amended complaints did not trigger either of the thirty-day periods in § 1446(b).  Plaintiff's claimed damages are facially unapparent in his complaints.  Additionally, contrary to Plaintiff's contention, Defendant was not required to investigate its payroll data to determine the removability of the class claims.  Therefore, the first indication of the removability of Plaintiff's claims was the October 18, 2017 damages chart.  Because Defendant removed this action within thirty days of receiving that chart, removal was timely under § 1446(b).

A defendant may waive the right to removal where "after it is apparent that the case is removable, the defendant takes action in state court that manifests his or her intent to have the matter adjudicated there, and to abandon his right to a federal forum."  Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1240 (9th Cir. 1994.)  A waiver of the right to removal must be "clear and unequivocal."  Id.  Short of "proceeding to an adjudication on the merits" in state court a party does not lose the right of removal.  Id.

Plaintiff protests the removal just one day before the state court was to rule on Plaintiff's class certification motion, particularly after the lengthy proceedings in state court.  (Mot. at 4, 8.)  Defendant has engaged actively in litigation in the state court.  However, merely filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute a waiver of the right to remove.  Acosta v. Direct Merchs. Bank, 207 F. Supp. 2d 1129, 1131 (C.D. Cal. 2002).  Instead, courts require voluntary acts such as the filing a permissive cross complaint and moving to compel arbitration to find a defendant waived the right to remove.  See Acosta, 207 F. Supp. 2d at 1132-133 (finding defendant's filing of a cross complaint constitutes waiver of the right of removal); McKinnon v. Doctor's Assocs., Inc., 769 F. Supp. 216, 220 (E.D. Mich. 1991).  Here, Defendant's opposition to a class certification motion in state court is more properly considered a "defensive action" than a voluntary act submitting to the state court's jurisdiction.  See Thompson v. Target Corp., 2016 WL 4119937, *11 (C.D. Cal. Aug. 2, 2012) (holding the defendant did not waive the right of removal after "aggressively litigat[ing] the matter at various levels of the California court system" and filing a petition at the state appellate court to preserve its right to appellate review of the superior court's certification order because it was a "defensive action" to preserve the status quo); Capretto v. Stryker Corp., 2007 WL 2462138, *3 (N.D. Cal. Aug. 29, 2007) ("The critical factor in determining whether a particular defensive action in the state court should operate as a waiver of the right to remove is the defendant's intent in making the motion.  If the motion is made only to preserve the status quo ante and not to dispose of the matter on its merits, it is clear that no waiver has occurred.").  Therefore, Defendant did not waive its right to remove the instant action, and the Court determines whether the amount in controversy exceeds the jurisdictional minimum.

## B. Amount in Controversy

Plaintiff does not dispute Defendant's NOR estimates for the amount in controversy concerning unpaid overtime wages, unpaid double-time wages, unpaid meal period premiums, wage statement penalties, or waiting time penalties.  (Mot. at 7; see also Reply.)  These numbers appear to come from a joint mediation session and Plaintiff's own calculations.  (Opp'n at 10.)  Rather, Plaintiff challenges the inclusion of damages for failure to provide rest periods and attorneys' fees.  (Mot. at 6.)  The Court accepts Defendant's undisputed estimates for the amount in controversy, and considers only the disputed damages.

### 1. Undisputed Damages

Defendant's NOR, using Plaintiff's calculations, established an aggregate amount in controversy, exclusive of attorneys' fees as $5,242,700 dollars.  (NOR at 17.)  Plaintiff also estimated $150,000 in attorneys' fees at the time they produced their damages statement to Defendant.  (Id. at 18.)  Defendant, however, estimated attorneys' fees over the life of the case as 25% of damages, bringing the amount in controversy to $6,553,375.  (Id.)  Plaintiff's Motion does not dispute the individual estimates for unpaid overtime wages, unpaid double-time wages, unpaid meal period premiums, wage statement penalties, or waiting time penalties.  (Mot. at 7.)

In its Opposition, Defendant updated the damages calculations for the additional three weeks between the date on which Plaintiff's calculations were based and the time of removal.  (Opp'n at 15.)  Plaintiff again only disputes Defendant's estimates for attorneys' fees and the failure to pay rest period damages.  Therefore, the Court determines Defendant proved by a preponderance of the evidence the amount in controversy for Plaintiff's claims for unpaid overtime wages, unpaid double-time wages, unpaid meal period premiums, wage statement penalties, or waiting time penalties to be $4,628,575.[1]

### 2. Failure to Provide Rest Periods

Plaintiff does not bring a claim for failure to provide rest periods in his TAC.  Nevertheless, in his damages statement to Defendant, Plaintiff asserted the amount in controversy related to his rest period claim was $948,142.  (Opp'n at 20.)  Plaintiff avers the rest period claim was prepared "for purposes of global resolution of all litigation" in conjunction with the other case's counsel for the joint mediation session.  (Dkt. No. 14-1, Hefelfinger Decl. ¶ 20.)

A damages estimate is relevant evidence of the amount in controversy if it appears to "reflect a reasonable estimate of the plaintiff's claim."  Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002).  Courts have held that where a plaintiff takes steps to disavow a damages estimate, the estimate alone is insufficient to show the requisite amount has been met.  See Vitale v.

---

[1] Total calculated as $1,830,390 in unpaid overtime wages, plus $366,078 in unpaid double-time wages, plus $960,347 in unpaid meal period premiums, plus $515,500 in wage statement penalties, plus $956,760 in waiting time penalties.

Celadon Trucking Servs., Inc., 2017 WL 626356, *4 (C.D. Cal. Feb. 15, 2017) (holding amount in controversy did not exceed jurisdictional minimum where plaintiff disavowed its mediation brief's damages estimate, reduced and disavowed some claims, and offered a new, lower calculation); Walker v. CorePower Yoga, 2013 WL 2338675, *7 (S.D. Cal. May 28, 2013) (holding settlement letter insufficient to establish amount in controversy after plaintiff disavowed the letter by stating it was calculated using unsupported and inflated assumptions).

Here, Defendant is correct that Plaintiff has not disavowed its mediation estimates in general. (Opp'n at 13.) The Court has already assumed those undisputed calculations are reasonable estimates. Nevertheless, Plaintiff has stated he did not plead a failure to provide rest periods claim and the calculation was for a "global resolution" of his and the other case at mediation. Plaintiff has maintained the other calculations and disavowed this particular claim's applicability to his case. In addition, Plaintiff's TAC does not include a claim for rest periods. It is not a reasonable assumption that because Plaintiff alleges a failure to provide meal periods, he would add an allegation for failure to provide rest periods in the future. Therefore, the Court cannot assume the damages statement, even if it only applied to Plaintiff's case, was a reasonable estimate of the amount in controversy for this unpleaded claim. Accordingly, the Court finds Defendant's estimated damages for the rest period claim should not be included in the amount in controversy.

### 3. Attorneys' Fees

Plaintiff also seeks recovery of attorneys' fees. (TAC ¶ 60.) This Court takes the position that when calculating attorneys' fees to establish jurisdiction, "the only fees that can be considered are those incurred as of the date of removal." See Faulkner v. Astro-Med, Inc., 1999 U.S. Dist. WL 820198, *9 (N.D. Cal. Oct. 4, 1999) (citing Miranti v. Lee, 3 F.3d 925, 928 (5th Cir. 1993)).

Defendant calculated Plaintiff's attorneys' fees through trial to be 25% of the total estimated damages, about $1,157,144. However, the Court considers attorneys' fees through the time of removal. Plaintiff estimated $150,000 in attorneys' fees at the time they produced their damages statement to Defendant. (NOR at 18.) Therefore, the Court finds the amount in controversy for attorneys' fees is $150,000.

## IV.   CONCLUSION

In sum, the Court finds Defendant has proven the amount in controversy is approximately $4,778,575,[2] which does not exceed the jurisdictional minimum. Thus, the Court does not have subject matter jurisdiction over Plaintiff's claims. The Court GRANTS Plaintiff's Motion and REMANDS the action to state court.

**IT IS SO ORDERED.**

---

[2] Calculated as undisputed damages of $4,628,575 plus attorneys' fees of $150,000.