**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| GRANT FRITSCH, an individual, *Plaintiff-Appellee*, | No. 18-55746 |
| v. | D.C. No. 5:17-cv-02226-JGB-SP |
| SWIFT TRANSPORTATION COMPANY OF ARIZONA, LLC, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted July 12, 2018
Pasadena, California

Filed August 8, 2018

Before: Sandra S. Ikuta and N. Randy Smith, Circuit
Judges, and Stephen M. McNamee,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Stephen M. McNamee, United States Senior District
Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

---

### Class Action Fairness Act

The panel reversed the district court's order that remanded this action to state court on the ground that the defendant removing party failed to prove that the matter in controversy exceeded the sum or value of $5 million, as required for jurisdiction under the Class Action Fairness Act ("CAFA").

As an initial matter, the panel considered whether the appeal was moot due to defendant's second removal. The panel concluded that, pursuant to the collateral consequences doctrine, defendant's appeal of the first remand order was not moot.

The panel held that the district court erred in concluding that the defendant failed to prove that CAFA's amount-in-controversy requirement was met. The panel held that in light of *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018), and this court's precedents, a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy was met. Applying the rule, the panel vacated the district court's remand order, and remanded to allow the district court to determine whether the defendant carried its burden of proving that the amount in controversy exceeded the jurisdictional threshold. The panel further held that the defendant retained

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the burden of proving the amount of attorneys' fees by a preponderance of the evidence.

The panel rejected the plaintiff's argument that future attorneys' fees should not be included in the amount in controversy because they were inherently speculative. The panel also rejected plaintiff's argument that it should adopt a per se equitable rule that the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery.

## COUNSEL

Paul Scott Cowie (argued), Karin Dougan Vogel, John D. Ellis, and Reanne Swafford-Harris, Sheppard Mullin Richter & Hampton LLP, San Francisco, California, for Defendant-Appellant.

Michael A. Strauss (argued), Strauss & Strauss, Ventura, California; Daniel J. Palay and Brian D. Hefelfinger, Palay Hefelfinger APC, Ventura, California; for Plaintiff-Appellee.

## OPINION

IKUTA, Circuit Judge:

Swift Transportation Company of Arizona (Swift) removed Grant Fritsch's third amended class action complaint to district court, alleging that it had subject matter jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d), 1453, and 1711–1715. The district court remanded the action to state court on the ground that Swift failed to prove that the matter in controversy exceeded the sum or value of $5 million, as required for jurisdiction under CAFA. In reaching this conclusion, the court held that only attorneys' fees that had been incurred as of the date of removal could be included in the amount in controversy. We conclude that if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy. The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence.

I

Because the issues in this appeal arise from a defendant's removal of a case filed in state court to federal court, we begin with the relevant background principles for such a removal.

Under 28 U.S.C. § 1441(a), a defendant may remove certain actions filed in state court to a district court so long as a federal court has jurisdiction over the action, and certain procedural requirements are met. The defendant starts the process by filing a notice of removal in the appropriate

district court, 28 U.S.C. § 1446(a), and giving notice to the adverse parties and the state court, *id.* § 1446(d).  The filing of a copy of the notice in state court "effect[s] the removal and the State court shall proceed no further unless and until the case is remanded." *Id.*

In this case, Swift alleged that the district court had jurisdiction over Fritsch's action under CAFA, which gives district courts jurisdiction over civil actions in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," the proposed class consists of more than 100 members, and "any member of [the] class of plaintiffs is a citizen of a State different from any defendant." *Id.* § 1332(d)(2).

The defendant must also meet certain procedural requirements.  Most important here, the removal must be timely.  A defendant must generally remove a case within 30 days of receiving the complaint. *See id.* § 1446(b)(1); *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1237 (9th Cir. 2014).  If the complaint itself does not provide a basis for removal, however, a defendant may file a notice of removal within 30 days after receipt of information "from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  "[I]nformation relating to the amount in controversy in the record of the State proceeding, or in responses to discovery" triggers the 30-day time limit. *Id.* § 1446(c)(3)(A).

The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  If the amount in

controversy is not clear from the face of the complaint, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

If the district court decides that a removed case does not satisfy the requirements for removal, the court must remand the action to state court. A party may appeal a district court's order "granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order." 28 U.S.C. § 1453(c)(1).

After a remand, the defendant may generally not remove the case a second time. *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015); *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991). Nevertheless, a defendant "who fails in an attempt to remove on the initial pleadings can file a removal petition when subsequent pleadings or events reveal a new and different ground for removal." *Kirkbride*, 933 F.2d at 732 (quoting *FDIC v. Santiago Plaza*, 598 F.2d 634, 636 (1st Cir. 1979) (emphasis omitted)). An intervening change in the law that "gives rise to a new basis for subject-matter jurisdiction" qualifies as a subsequent event that justifies a successive removal petition. *Reyes*, 781 F.3d at 1188; *see also Rea*, 742 F.3d at 1238; *Kirkbride*, 933 F.2d at 732. A defendant can file a successive removal notice within 30 days after a change in law that revealed the facts necessary for federal court jurisdiction. *Rea*, 742 F.3d at 1237–38.

II

We now turn to the facts of this case.  Fritsch filed this wage-and-hour class action in San Bernardino Superior Court.  According to the third amended complaint filed in state court, Fritsch worked for Swift, a trucking and transportation company, as a local driver.  He alleged that Swift denied him and other employees proper overtime pay, meal periods, and appropriate wage statements.  Fritsch sought wages and premiums owed, prejudgment interest, statutory penalties, attorneys' fees under California Labor Code §§ 218.5 and 1194,[1] and costs of suit.  He also asked for equitable relief under California's unfair competition law and statutory damages under California's Private Attorneys General Act (PAGA).

---

[1] Cal. Labor Code § 218.5(a) provides in relevant part:

> In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.

Cal. Labor Code § 1194(a) provides in relevant part:

> [A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

On October 18, 2017, Fritsch delivered a mediation brief to Swift.  The brief included a damages chart that contained the following information:

- $1,806,080 Unpaid Overtime Wages
- $361,216 Unpaid Double-time Wages
- $531,404 Interest on Unpaid Overtime Wages
- $948,192 Unpaid Meal Period Premiums
- $948,192 Unpaid Rest Period Premiums
- $150,000 Attorneys' Fees and Costs (as of October 18, 2017)
- $515,000 Wage Statement Penalties
- $664,020 Waiting Time Penalties
  **Total:** $5,924,104.

Fritsch also estimated that Swift faced PAGA penalties of $5,874,079.

On October 31, 2017, Swift filed a notice of removal in district court, alleging that the district court had jurisdiction under CAFA.  To establish that the action exceeded $5 million, Swift relied on the damages chart.  Subtracting estimated interest payments and PAGA penalties (which are not included in the amount in controversy, *see* 28 U.S.C. § 1332(d)(2); *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1060–61 (9th Cir. 2015)), Swift alleged that the amount in controversy was $5,392,700.  In addition to the $150,000 in attorneys' fees and costs that had been incurred as of October 18, 2017 (according to the damages chart), Swift noted that the court could also recognize future attorneys' fees that would accrue over the course of the case.  Based on Swift's estimate, such future fees would increase the amount in controversy to $6,553,375.

In determining its jurisdiction under CAFA, the district court first noted that the parties did not dispute that CAFA's minimum diversity and class numerosity requirements were met. The court rejected Fritsch's argument that the removal notice was untimely. The court reasoned that Fritsch's complaint did not establish the amount in controversy, and therefore Swift's first notice that Fritsch's claims were removable occurred when Swift received the damages chart on October 18, 2017. Swift timely removed the action within thirty days after receiving the chart.

Turning to the amount in controversy, the court held that because Fritsch's complaint did not include a claim for failure to provide rest periods, the entry in the damages chart — "$948,192 Unpaid Rest Period Premiums" — could not be included as part of the jurisdictional amount. With respect to the attorneys' fees, the court explained "that when calculating attorneys' fees to establish jurisdiction, the only fees that can be considered are those incurred as of the date of removal." (internal quotations omitted).[2] The court therefore included only the $150,000 of attorneys' fees that Fritsch had set forth in the damages chart as having been incurred prior to

---

[2] At the time of the district court's ruling, district courts in the Ninth Circuit were split on whether a court could include future attorneys' fees in the amount in controversy. *Compare Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) ("[T]he measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred."), *with Fortescue v. Ecolab Inc.*, No. CV 14-0253-FMO-RZX, 2014 WL 296755, at *3 (C.D. Cal. Jan. 28, 2014) ("[T]he better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal." (quoting *Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-PHX-NVW, 2010 WL 94109, at *2 (D. Ariz. Jan., 6, 2010))). At the time the district court ruled, we had not yet addressed the issue.

removal.  The court held that Swift had not been able to prove by a preponderance of the evidence that the amount in controversy exceeded $5 million; rather, Swift's evidence established that only $4,778,575 was at stake.  Because this amount did not meet the minimum required by CAFA, the court held that it lacked jurisdiction, and remanded the action to the state court.

Swift timely petitioned this Court for permission to appeal under 28 U.S.C. § 1453(c).[3]  While the petition was pending, litigation proceeded in state court.

On April 20, 2018, we issued our decision in *Chavez v. JPMorgan Chase & Co.*, which, as explained in more detail below, held that "the amount in controversy is not limited to damages incurred prior to removal — for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal)," but rather "is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious."  888 F.3d 413, 414–15 (9th Cir. 2018).

We granted Swift's petition to appeal on June 11, 2018. Two days later, Swift filed a second notice of removal in district court, contending that our intervening decision in *Chavez* "now demonstrates beyond any doubt that the amount in controversy in this action exceeds the jurisdictional minimum."

---

[3] Under § 1453(c)(1), "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order."

FRITSCH V. SWIFT TRANSPORTATION          11

We ordered the parties to submit supplemental briefing on whether Swift's second notice of removal rendered the present appeal moot.  Shortly after we heard oral argument, Fritsch moved to remand Swift's second notice of removal on a number of grounds, including that it was untimely.  Fritsch argued that our rule that a defendant can file a successive removal notice within 30 days after a change in law, *see Rea*, 742 F.3d at 1237–38, did not help Swift, because Swift had filed its second removal order 59 days after we issued *Chavez*.

III

We first consider whether this appeal is moot due to Swift's second removal.  There is no case or controversy, and an appeal becomes moot, when "it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (citation omitted). Fritsch contends that the present appeal is moot because the only relief available to Swift is a reversal of the district court's December 2017 remand order, which would merely return Swift to district court.  Because Swift is already in district court, Fritsch argues, we cannot give it any effective relief.

Fritsch is correct that Swift's case is now pending in district court, which is the relief Swift seeks.  Nevertheless, a case is not moot so "long as the parties have a concrete interest, however small, in the outcome of the litigation." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Chafin*, 568 U.S. at 172).  If "a party can demonstrate that a lower court's decision, if allowed to stand, may have collateral consequences adverse to its interests," the party can avoid dismissal for mootness. *City of Colton v. Am.*

*Promotional Events, Inc.-W.*, 614 F.3d 998, 1006 (9th Cir. 2010) (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 88 (1st Cir. 2008)).

We have applied the collateral consequence doctrine in a case analogous to this one. *See id.* at 1006. In that case, the district court granted summary judgment in favor of the defendants and dismissed the plaintiff's declaratory judgment action. *Id.* at 1004. While the dismissal of the first declaratory judgment action was on appeal, the plaintiff filed a second declaratory judgment action raising the same claim. *Id.* at 1005. The defendants argued that the first appeal was now moot because the plaintiff had effectively redressed its injury (dismissal of its first declaratory judgment action) by filing a second action seeking the same relief. *Id.* at 1005–06. We disagreed, noting that certain defendants had raised a statute of limitations defense to the plaintiff's claims, and those defendants had pressed those claims in the second action. *Id.* at 1006. We reasoned that "[a] reversal by this court could put [the plaintiff] on better footing with regard to limitations defenses, which 'is a collateral consequence of the type that suffices to defuse a claim of mootness.'" *Id.* (quoting *Connectu*, 522 F.3d at 89). In other words, we recognized that, if we decided that the district court erred in dismissing the first action, the plaintiff could argue that its first declaratory judgment action tolled the statute of limitations. *Id.* By contrast, if we dismissed the appeal of the first action, the plaintiff might face a potential statute of limitations bar against its second action. *Id.* In light of this collateral consequence, we determined that the plaintiff's appeal was not moot. *Id.*

Applying the collateral consequence doctrine here, we conclude that Swift's appeal of the first remand order is not

moot.  In his motion in district court to remand Swift's second removal, Fritsch argued that the removal was untimely, because Swift had removed the action more than 30 days after we issued our decision in *Chavez*.  As in *City of Colton*, if we dismiss Swift's appeal of the first remand as moot, Swift will have to defend against this timeliness challenge.[4]  By contrast, the district court determined that Swift's first notice of removal was timely because Swift removed the action within 30 days of receiving Fritsch's damages chart.  Fritsch did not appeal that determination.  If we hold that the district court's first remand order was erroneous, Swift will not be vulnerable to the argument that its removal was untimely.  Because our decision on the merits will "put [Swift] on better footing with regard to" a timeliness argument, *id.*, we conclude that Swift's appeal of the first remand order is not moot.

## IV

We now turn to the merits of Swift's appeal.  The only issue on appeal is whether the district court erred in concluding that Swift failed to prove, by a preponderance of

---

[4] At oral argument, Fritsch asserted that Swift would not face collateral consequences from our dismissal of its appeal because it could move for reconsideration of the previous order in district court. United States Court of Appeals for the Ninth Circuit, *18-55746, Fritsch v. Swift Transp. Co of Ariz.*, YouTube 14:15–30 (July 12, 2018) https://www.youtube.com/watch?v=KD_Flj44mhA.  Swift argued that such a motion would not be timely.  Regardless whether Swift could move for reconsideration, the availability of an alternative form of relief does not render Swift's present appeal moot because an appeal is not moot if "the appellate court can give the appellant *any* effective relief."  *City of Colton*, 614 F.3d at 1005 (emphasis added) (quoting *NASD Dispute Resolution, Inc. v. Judicial Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007)).

the evidence, that CAFA's amount-in-controversy requirement was met.[5]  We review remand orders in CAFA cases de novo.  *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 927 (9th Cir. 2015).

"Where, as here, it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (internal citations and quotation marks omitted).  Along with the complaint, we consider allegations in the removal petition, as well as "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

We have previously explained that the amount in controversy is the "amount at stake in the underlying litigation." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (quoting *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005)). "[T]his includes any result of the litigation, excluding interests and costs, that 'entails a payment' by the defendant." *Id.* (quoting *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007)).  Among other items, the amount in

---

[5] Fritsch does not dispute that the district court correctly included $4,628,575 in undisputed damages and $150,000 in attorneys' fees in its calculation of the amount in controversy.  Swift does not appeal the district court's decision to exclude any claim for unpaid rest period premiums from the amount in controversy.

controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract. *See id.* at 648–49; *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013); *Kroske*, 432 F.3d at 980.

Prior to *Chavez*, however, we had not clarified what it meant to say that the amount in controversy is determined "at the time of removal," *Kroske*, 432 F.3d at 980 (citation omitted), and district courts had not consistently applied this language. *Compare Aguilar v. Wells Fargo Bank, N.A.*, No. CV 15-01833-AB-SPX, 2015 WL 6755199, at *4 (C.D. Cal. Nov. 4, 2015) (considering only lost wages incurred through the time of removal), *with Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC, 2014 WL 2468344, at *4 (C.D. Cal. May 30, 2014) (considering defendant's estimate of lost wages incurred between removal and trial). We wrote to clarify this issue in *Chavez*.

In *Chavez*, the plaintiff sued her former employer for employment harassment, discrimination, and retaliation. 888 F.3d at 415. The employer removed the action to district court and the court granted summary judgment for the employer. *Id.* at 414. On appeal, the plaintiff argued that removal was improper and we lacked subject matter jurisdiction because the amount in controversy did not exceed $75,000. *Id.* at 415. The plaintiff agreed that if she had succeeded in her claim, she would have been entitled to over $350,000 in lost wages under California law. *Id.* at 416. Nevertheless, the plaintiff argued that the rule that the amount in controversy must be assessed as of "the time of removal" meant that the amount in controversy included only the lost

wages for the period between her termination and the defendant's removal of the action, which was less than $75,000.  *Id.* at 417.

We rejected this argument.  We explained that the amount in controversy is the "amount at stake in the underlying litigation," and therefore "the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails."  *Id.* at 417–18.  In the plaintiff's case, we explained, "if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them."  *Id.* at 417.  Because the plaintiff's complaint at the time of removal claimed wrongful termination resulting in lost future wages, those future wages were included in the amount in controversy, and the court had subject matter jurisdiction over the action.  *Id.* at 418.

Although *Chavez* noted that the amount in controversy may include damages, costs of compliance with injunctions, and attorneys' fees awarded under contract or fee shifting statutes, it did not expressly address whether attorneys' fees incurred after removal were properly included in the amount in controversy.  This appeal requires us to address this issue.  We conclude, in light of *Chavez* and our precedents, that a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.  *See id.* at 417–18; *Gonzales*, 840 F.3d at 648; *Lowdermilk*, 479 F.3d at 1000; *Kroske*, 432 F.3d at 980.  We have long held (and reiterated in *Chavez*) that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy.  *Gonzales*, 840 F.3d at 648; *Lowdermilk*,

479 F.3d at 1000; *Kroske*, 432 F.3d at 980.  As explained in *Chavez*, when we assess the amount in controversy at the time of removal, we must include all relief to which a plaintiff is entitled if the action succeeds.  888 F.3d at 418. Accordingly, if the law entitles the plaintiff to future attorneys' fees if the action succeeds, "then there is no question that future [attorneys' fees] are 'at stake' in the litigation," *id.* at 417, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy.

Applying this rule here, we must vacate the district court's remand order.  In his complaint, Fritsch demanded attorneys' fees permitted by California law.  *See* Cal. Labor Code §§ 218.5, 226, 1194.  Because the law entitles Fritsch to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy.  Therefore, the district court's conclusion that, as a matter of law, the amount in controversy included only the $150,000 in attorneys' fees incurred up to the time of removal and could not include any future fees, was incorrect.  Accordingly, we must remand to allow the district court to determine whether Swift can carry its burden of proving that the amount in controversy (including future attorneys' fees) exceeds the jurisdictional threshold.  *Urbino*, 726 F.3d at 1121–22.

Fritsch raises two arguments against this conclusion. First, Fritsch urges us to limit *Chavez* to its facts, arguing that *Chavez* applies only to claims for future wage loss.  But while *Chavez* itself concerned a claim for future wage loss, its holding applies to any class of damages included in the amount in controversy.  *See* 888 F.3d at 418.  Although we did not explicitly address attorneys' fees in *Chavez*, we noted

that the amount in controversy "may include 'damages . . . as well as attorneys' fees awarded under fee shifting statutes.'" *Id.* at 416 (quoting *Gonzales*, 840 F.3d at 648–49). We emphasized that "the amount in controversy includes *all relief* claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Id.* at 418 (emphasis added). Further, we explained that "the mere futurity of *certain classes of damages*" does not preclude them from being part of the amount in controversy. *Id.* at 417 (emphasis added). The phrases "all relief" and "certain classes of damages" encompass all of the plaintiff's future recovery, not lost wages alone. Accordingly, *Chavez*'s reasoning clearly applies to attorneys' fees.

Second, Fritsch argues that future attorneys' fees should not be included in the amount in controversy because they are inherently speculative and can be avoided by the defendant's decision to settle an action quickly. In making this argument, Fritsch relies on *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998). In that case, the Seventh Circuit analyzed the jurisdictional provision in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d), which gives federal courts jurisdiction over claims where the amount in controversy equals or exceeds a specified amount. *Gardynski-Leschuck*, 142 F.3d at 956. *Gardynski-Leschuck* held that the amount in controversy cannot include attorneys' fees that have not yet been incurred because "[u]nlike future income lost to injury, legal fees are avoidable" if the defendant promptly settles the case. *Id.* at 958. For this reason, *Gardynski-Leschuck* stated, "legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed." *Id.* at 959; *see also ABM Sec. Servs., Inc. v. Davis*, 646 F.3d 475, 479 (7th Cir. 2011)

(holding that only attorneys' fees incurred up to the time of removal could be included in the amount in controversy); *Smith v. Am. Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 896–97 (7th Cir. 2003) (same).

Our precedent requires us to part ways with the Seventh Circuit. We have held that attorneys' fees awarded under fee-shifting statutes or contracts are part of the amount in controversy, *Gonzales*, 840 F.3d 648, and that the amount in controversy includes *all* relief to which the plaintiff is entitled if the action succeeds, *Chavez*, 888 F.3d at 418. We may not depart from this reasoning to hold that one category of relief — future attorneys' fees — are excluded from the amount in controversy as a matter of law.

Moreover, we are confident that district courts are well equipped to determine whether defendants have carried their burden of proving future attorneys' fees, and to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement. Unlike the Seventh Circuit, where the defendant need show only "a reasonable probability" that the amount in controversy exceeds the minimum, *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005), we require a removing defendant to prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence. We also require the defendant to make this showing with summary-judgment-type evidence, *Chavez*, 888 F.3d at 416; *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir. 2017). A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof. Moreover, district courts have developed expertise in determining "the number of hours reasonably

expended on the litigation multiplied by a reasonable hourly rate" when awarding attorneys' fees under a statute or contract authorizing recovery of "reasonable attorneys' fees" at the close of litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see* 42 U.S.C. § 1988(b) (authorizing recovery of "a reasonable attorney's fee"); Cal. Labor Code §§ 218.5(a), 1194(a) (same). In estimating future attorneys' fees, district courts may likewise rely on "their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). Given district courts' expertise in evaluating litigation expenses and defendants' obligation to prove future attorneys' fees by a preponderance of the evidence, we do not share the Seventh Circuit's concern that calculating future attorneys' fees is inherently too speculative.

For the same reason, we reject Swift's argument that we should hold that, as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery. Swift argues that this per se rule is appropriate because, in common fund cases, we have estimated reasonable attorneys' fees to be 25 percent of the total recovery. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Such a per se equitable rule is inapplicable in this context, however.[6] As we have already

---

[6] We do not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a per se rule is inappropriate. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees.") (citation omitted).

FRITSCH V. SWIFT TRANSPORTATION          21

explained, the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation.   Moreover, a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place.   *See Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009).   A state may adopt the lodestar method for determining reasonable attorneys' fees under certain statutes, *see Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001), or (as in this case) not allow recovery of attorneys' fees for legal work on certain types of claims, *see Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012) (stating that the attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims).   The court's determination regarding the amount of attorneys' fees at stake must take into account these statutory and contractual restrictions.

Accordingly, we leave the calculation of the amount of the attorneys' fees at stake to the district court on remand.[7]

**REVERSED AND REMANDED.**

---

[7] Because we reverse and remand the district court's remand order on this basis, we need not address Swift's argument that, since the first removal, sufficient damages have accrued to meet the amount-in-controversy threshold.