Daniel J. Palay, SBN 159348
djp@calemploymentcounsel.com
Brian D. Hefelfinger, SBN 253054
bdh@calemploymentcounsel.com
**PALAY HEFELFINGER, APC**
1746 S. Victoria Ave., Ste 230, Ventura, CA 93003
Tel: (805) 628-8220; Fax: (805) 765-8600

Michael A. Strauss, SBN 246718
mike@strausslawyers.com
Andrew C. Ellison, SBN 283884
andrew@strausslawyers.com
**STRAUSS & STRAUSS, APC**
226 W. Ojai Ave., Ste 101-325, Ojai, CA 93023
Tel: (805) 641-6600; Fax: (805) 641-6607

*Counsel for Plaintiff Grant Fritsch and the Putative Class*
[Additional Counsel listed on next page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT FRITSCH, an individual; BILL BARKER, an individual; TAB BACHMAN, and individual; WILLIAM YINGLING, an individual; for themselves and those similarly-situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. 5:17-cv-02226 VAP(KKx)<br><br>*[Removed from: San Bernardino County Case No. CIVDS1518012]*<br><br><u>CLASS ACTION</u><br><br>**MOTION FOR FINAL APPROVAL OF CLASS AND PAGA SETTLEMENT**<br><br>Date:      January 3, 2022<br>Time:      2:00 p.m.<br>Judge:     Hon. Virginia Phillips<br>Courtroom:  8A<br>Action Filed:  12/10/2015 |

**THE MARKHAM LAW FIRM**
David R. Markham (SBN 071814)
*dmarkham@markham-law.com*
Maggie Realin (SBN 263639)
*mrealin@markham-law.com*
Lisa R. Brevard (SBN 323391)
*lbrevard@markham-law.com*
8910 University Center Lane, Suite 400
San Diego, CA 92122
Tel: (619) 399-3995
Fax: (619) 615-2067

**THE RDM LEGAL GROUP**
Russel Myrick (SBN 270803)
*russel@rdmlg.com*
MANCHESTER FINANCIAL BUILDING
7979 Ivanhoe Avenue, Suite 400
La Jolla, California 92037
Tel.: 888.482.8266; Fax: 858.244.7930

*Counsel for Plaintiffs*
Bill Barker, Tab Bachman, and William Yingling
and the Putative Class

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 3, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Virginia A. Phillips, at First Street Courthouse, Courtroom 8A, 8th Floor, 350 West 1st Street, Los Angeles, CA 90012, Plaintiffs Grant Fritsch, Bill Barker, Tab Bachman, and William Yingling ("Plaintiffs") will and hereby do move the Court pursuant to Federal Rule of Civil Procedure 23 for an Order granting final approval of the parties' Settlement of Class Action and PAGA Claims ("Settlement" or "PAGA/Class Agreement," Dkt. No. 100-1 at Page ID nos. 3441-3482).

This motion is *unopposed* by Defendant Swift Transportation Co. of Arizona, LLC.

This motion is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's Preliminary Approval Order (Dkt. No. 105). The motion will be based on this Notice, the operative complaint in this action, the Memorandum of Points and Authorities filed herewith, the Settlement, the declarations filed herewith in support of this motion, the Motion for Preliminary Approval and the Motion for Approval of Attorneys' Fees and Costs and Class Representatives' Service Awards, the Proposed Order filed with this motion, and on the other pleadings and memoranda in this matter and such further evidence and argument as may be presented at or before the hearing on this Motion.

This motion is made following the completion of the class notice process whereby the Claims Administrator mailed the Class Notice to all persons identified as members of the Settlement Class by First Class Mail on November 4, 2021.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place prior to the filing of Plaintiffs' Motion for Preliminary Approval on September 3, 2021.

Date: December 3, 2021          STRAUSS & STRAUSS, APC

By: */s/ Michael A. Strauss*
Michael A. Strauss
Attorneys for Plaintiffs and the Putative Class

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................ 1

    A.   Procedural history. ...................................................... 1

    B.   Settlement Agreement. ................................................. 2

    C.   Updates since preliminary approval. .............................. 4

III.  MOTION FOR FINAL APPROVAL ..................................... 5

    A.   Class Certification. ...................................................... 5

    B.   Final Approval. ........................................................... 6

        1.   The class representatives and class counsel have adequately represented the class. ................................ 7

        2.   The proposed settlement was negotiated at arm's length. .............. 8

        3.   The relief provided for the Class is adequate. ................................ 9

            a.   Costs, risks, and delay of trial and appeal. ......................... 9

            b.   Effectiveness of proposed method of relief distribution...... 10

            c.   Terms of proposed award of attorneys' fees...................... 11

            d.   Agreement identification requirement. ............................... 11

        4.   Class Members are treated equitably. ............................................. 11

    C.   Questions raised in Order granting preliminary approval. ...................... 12

        1.   There are no obvious deficiencies in the Settlement. ................... 12

        2.   There is no preferential treatment to class representatives. ........... 13

        3.   The experience and views of counsel weigh in favor of approval. 14

    D.   The PAGA portion of the Settlement should be approved...................... 14

    E.   Response of the Class.................................................. 18

IV.   CONCLUSION .............................................................. 18

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Bedolla*,
 787 F.3d 1218 (9th Cir. 2015) ...................................................................6

*Arias v. Superior Court*,
 46 Cal. 4th 969 (2009) ...........................................................................14

*Baumann v. Chase Inv. Servs. Corp.*,
 747 F.3d 1117 (9th Cir. 2014) ................................................................14

*Cicero v. DirecTV, Inc.*,
 No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ...................13

*Contreras v. Worldwide Flight Servs., Inc.*,
 No. CV 18-6036 PSG (SSX), 2020 WL 2083017 (C.D. Cal. Apr. 1, 2020)........17

*Cotter v. Lyft, Inc.*,
 193 F. Supp. 3d 1030 (N.D. Cal. 2016)......................................................16

*Craft v. County of San Bernardino*,
 624 F. Supp. 2d 1113 ...........................................................................12

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*,
 253 F. Supp. 3d 1074 (C.D. Cal. 2017). ....................................................16

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ..................................................................6

*Hollis v. Weatherford US LP*,
 No. 1:16-CV-00252-JLT, 2017 WL 131994 (E.D. Cal. Jan. 12, 2017) ..............16

*Hopson v. Hanesbrands, Inc.*,
 No. CV 08-0844 EDL, 2008 WL 3385452 (S.D. Cal. Apr. 13, 2009)................18

*In re M.L. Stern Overtime Litig.*,
 No. CV 07-0118 BTM (JMAx), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ....18

*In re Syncor ERISA Litig.*,
 516 F.3d 1095, 1101 (9th Cir. 2008) ..........................................................6

*Junhee Lee v. Esra Jung*,

    No. 15-cv-01529-HRL, 2016 U.S. Dist. LEXIS 136162 (N.D. Cal. Sep. 29, 2016)......................................................................................................................15

*Kullar v. Foot Locker Retail, Inc.*,

    168 Cal. App. 4th 116 (2008)....................................................................................9

*Nat'l Coal. of Associations of 7-Eleven Franchisees v. Southland Corp.*,

    210 F.3d 384 (9th Cir. 2000)..................................................................................18

*O'Connor v. Uber Techs., Inc.*,

    No. 13-cv-03826-EMC, 2019 WL 4394401 (N.D. Cal. Sept. 13, 2019) ...5, 16, 18

*O'Connor v. Uber Techs., Inc.*,

    No. 13-cv-03826-EMC, 2019 WL 4394401 (N.D. Cal. Sept. 13, 2019) ...............5

*Ochinero v. Ladera Lending, Inc.*,

    No. SACV191136JVSADSX, 2021 WL 4460334 (C.D. Cal. July 19, 2021) .......9

*Ochoa-Hernandez v. Cjaders Foods, Inc.*,

    No. C 08-2073 MHP, 2010 WL 1340777, (N.D. Cal. Apr. 2, 2010) ..................15

*People v. Pacific Land Research Co.*,

    20 Cal. 3d 10, 17 (1977)........................................................................................15

*Radcliffe v. Experian Info. Solutions, Inc.*,

    715 F.3d 1157, 1165 (2013) ..................................................................................14

*Rodriguez v. West Publishing Corp.*,

    563 F.3d 948 (9th Cir. 2009)...................................................................................9

*Romero v. Producers Dairy Foods, Inc.*,

    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ......................................................13

*Singer v. Becton Dickinson and Co.*,

    2010 WL 2196104 (S.D. Cal. June 1, 2010) ........................................................13

*Syed v. M-I, L.L.C.*,

    No. 112CV01718DADMJS, 2017 WL 714367 (E.D. Cal. Feb. 22, 2017)....16, 18

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................ 13

*Wershba v. Apple Computer, Inc.*,

    91 Cal. App. 4th 224 (2001) .......................................................... 10

*Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

    No. 17-853, 2020 WL 1492672 (E.D. Cal. Mar. 27, 2020) ............................ 18

**STATUTES**

California Labor Code § 2699 ..................................................... 15, 16

**RULES**

Federal Rule of Civil Procedure 23 ...................................................5, 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court preliminarily approved the Settlement of Class Action and PAGA Claims[1] (hereinafter referred to as the "Settlement" or "PAGA/Class Agreement") entered into by Plaintiffs Grant Fritsch, Bill Barker, Tab Bachman, and William Yingling and Defendant Swift Transportation Co. of Arizona, LLC. ("Swift").  Subsequently, the Court-appointed settlement administrator distributed the approved class notice to the Class Members in compliance with the Court's preliminary approval order.  None of the Class Members filed an objection or opted out of the Settlement.  Given the widespread support of the Settlement, Plaintiffs now move the Court for final approval pursuant to Rule 23(e).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural history.

The proposed class action settlement before the Court arises out of a six-year employment violations lawsuit. Defendant Swift Transportation Co. of Arizona, LLC, ("Defendant"), is a transportation services company operating a fleet of trucks and equipment in North America.  Order Granting Motion for Preliminary Approval of Class and PAGA Settlement ("MPA Order"), Dkt. No. 105 at 1.  From approximately 2011 through 2015, Plaintiff Fritsch worked for  Defendant as a "yard hostler," a position that involves driving a utility vehicle hitched to a freight trailer in order to move trailers from the yard to various loading docks. *Id.* at 1-2. Fritsch and the other Named Plaintiffs, who were also employed as yard hostlers with Defendant, allege they suffered labor violations including: working more than 8 hours in a day or more than 40 hours in a week; receiving pay for overtime hours worked at only a straight-time rate; failing to receive all lawful meal and rest periods; and failing to be reimbursed for cleaning supplies and work tools. *Id.* at 2.

---

[1] The Settlement may be found at Dkt. No. 100-1, Page ID nos. 3441-3482.

Plaintiff Grant Fritsch filed a class-action complaint in the San Bernardino County Superior Court on December 10, 2015. *Id.* He subsequently filed a First Amended Complaint on January 28, 2016, alleging claims for failure to pay wages, failure to provide accurate paystubs, unfair competition, and violations of the Private Attorneys General Act ("PAGA"). *Id.*

On April 1, 2016, a similar putative class action was filed on behalf of Swift yard hostlers—*Barker et al. v. Swift Transportation Company of Arizona, LLC*—in the Sacramento County Superior Court. *Id. Barker* was later removed to the United States District Court for the Eastern District of California. *Id.* The parties to the *Fritsch* and *Barker* actions joined together and held three private mediation sessions in October of 2017, April of 2018, and December of 2020. *Id.* Following the December 2020 mediation, the parties agreed to settle and resolve both cases, entering into a proposed Settlement of Class Action and PAGA Claims ("Settlement"). *Id.*

In order to implement the Settlement, the parties stipulated to Plaintiffs filing a Fourth Amended Complaint (FAC) in the *Fritsch* action, adding three additional Plaintiffs, and consolidating the pleadings from the Fritsch and Barker actions. Settlement, Dkt. No. 100-1, at 4. No new factual allegations were added. Plaintiffs filed the FAC on April 29, 2021, asserting a total of ten claims for alleged Labor Code violations and PAGA violations. Dkt. No. 92.

On September 3, 2021, Plaintiffs moved the Court for an order preliminarily approving the proposed Settlement of Class Action and PAGA Claims. Dkt. No. 100. On October 4, 2021, the Court granted the motion. MPA Order, Dkt. No. 105.

On November 22, 2021, Plaintiffs moved the Court for an award of attorneys' fees and costs. Dkt. No. 106. The hearing on the motion for fees is to be held on the same day as that for the instant motion for final approval of the Settlement.

**B. Settlement Agreement.**

The Settlement Class consists of "all persons employed by Defendant as yard hostlers in California at any time during the Settlement Class Period, or December 7,

2011 through October 5, 2021, the date preliminary approval was granted." MPA Order, Dkt. No. 105 at 3. There are approximately 320 individuals in the settlement class. *Id.*

The proposed Settlement also resolves Plaintiffs' representative claim for civil penalties under PAGA, which will result in payment of PAGA penalties to be apportioned between the California Labor and Workforce Development Agency ("LWDA") and the "PAGA Members." Settlement at ¶ IV.3. "PAGA Members" means all persons employed by Swift as yard hostlers in California during the PAGA Period, i.e., from December 9, 2014 through October 5, 2021. *Id*. at ¶ I.A.

In exchange for Class Members' and PAGA Members' release of their claims as set forth in the Settlement, these individuals will receive monetary relief. Defendant will pay a maximum, non-reversionary settlement amount of Eight Hundred Twenty-Five Thousand Dollars and Zero Cents ($825,000.00) (the "Gross Settlement Amount"). Settlement at ¶ II.A. From the Gross Settlement Amount, $50,000 will be allocated to the payment of PAGA penalties (75% of which will go to the LWDA and 25% will go to the PAGA Members), up to $275,000 will be allocated for attorneys' fees, up to $60,000 will be allocated for litigation costs and expenses, up to $40,000 in the aggregate will be allocated for Service Enhancements to Plaintiffs (up to $10,000 each), and $10,000 will be allocated for Settlement Administrator costs. *Id.* at ¶ VII.3. After these allocations, the remaining amount of the Gross Settlement Amount (the "Net Settlement Amount") will be disbursed to the Class Members. Settlement at ¶ VII.3(f).

The Net Settlement Amount shall be distributed to the Settlement Class Members based on the pro rata number of workweeks they worked for Defendant as "Employees" (defined to include only time spent in the position of yard hostler) during the Settlement Class Period compared to the number of workweeks worked by all Settlement Class Members as "Employees" during the Settlement Class Period. The Settlement Administrator shall compute a gross award amount for each Settlement Class Member that is equal to the Net Settlement Amount multiplied by the number of workweeks worked by the Settlement Class Member as an Employee during the Settlement Class

Period divided by the number of total workweeks worked by all Settlement Class Members as "Employees" during the Settlement Class Period. Settlement at ¶ VII.4(a).

Each PAGA Member shall receive a pro rata amount of the PAGA Member Portion (i.e., 25% of the $50,000 allocated to PAGA penalties) based on their pro rata share of pay periods they worked during the PAGA Period divided by the total pay periods worked by all PAGA Members during the PAGA Period. *Id*. at ¶ VII.4(b).

Swift shall fund the Settlement within 30 days after its Effective Date by paying the Settlement Amount to the Claims Administrator. Settlement at ¶ VII.5(i). In turn, the Claims Administrator shall disburse the funds within seven days after receipt thereof. *Id.* at ¶ VII.5(j). Checks not cashed within 180 days after issuance will be disbursed to the California State Controller's Unclaimed Property Fund. *Id.*

**C. Updates since preliminary approval.**

The Court granted Plaintiff's motion for preliminary approval on October 5, 2021. MPA Order, Dkt. No. 105. Pursuant to the Court's order granting preliminary approval, the Claims Administrator, CPT Group, Inc., sent the approved Class Notice to all Class Members. Declaration of Daniel P. La (on Behalf of CPT Group, Inc.) with Respect to Notification and Settlement Administration ("CPT Decl.") at ¶ 2; see also Dkt. No. 106-6 at ¶ 6. No mailing was returned as undeliverable. CPT Decl. at ¶ 3. The total deliverability of class notices to Class Members is 100 percent. *Id.*

Per the Settlement, Class Members were not required to submit a claim form to participate in the Settlement. Settlement at ¶¶ VII.5(f) (Class Members who do not timely opt out of the Settlement are bound by its terms). The deadline to opt out of or object to the Settlement is December 6, 2021. So far, no one has filed an objection to the Settlement. CPT Decl. at ¶ 5. Additionally, no one has opted out of the Settlement. *Id.* at ¶ 6.

On October 6, 2021, counsel for Swift provided a CAFA Notice to the United States Attorney General, the Attorney General of the State of California, and the Attorneys General of all states in which Non-Claimant Settlement Class Members reside

based on the last known mailing address in Swift's HR system of record. Dkt. No. 25. No state Attorney General has objected to the terms of the Settlement. Declaration of Brian D. Hefelfinger in Support of Motion for Final Approval of Class and PAGA Settlement ("Hefelfinger Decl.") at ¶ 24.

## III.   MOTION FOR FINAL APPROVAL

### A. Class Certification.

When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of the Settlement Class is appropriate under Federal Rule of Civil Procedure 23(a) and (b). Rule 23(a) provides that a class action can be maintained if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. 23(a)(1)-(4). As relevant here, settlement certification of a Rule 23(b)(3) class requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action [be] superior to any other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3).

The Court analyzed these factors in its Preliminary Approval Order and there is no reason to disturb its earlier conclusions. *See O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 4394401, at *4 (N.D. Cal. Sept. 13, 2019). The requirements of Rule 23(a) and (b)(3) were satisfied then. *See* Dkt. 105 at 8-14. There have been no changes to the class impacting the numerosity, commonality, typicality, and adequacy of representation factors. Strauss Decl. at ¶¶ 4-8. Nor have any questions of law or fact common to the Settlement Class been subsumed by questions affecting only individual class members. *Id.* Indeed, the notice procedure authorized by the Court has resulted in an overwhelmingly positive reaction by the Class Members, since none opted out or objected to the Settlement. *Id.* at ¶ 9. There is no reason for the Court, therefore, to depart from its previous conclusion that the Settlement Class meets the certification requirements of Rule 23.

The Court did identify one Rule 23(a) issue that needed to be revisited at final approval: whether RDM Legal Group, co-counsel for Plaintiffs Barker, Bachman, and Yingling, adequately represent or protect the interests of the Class. MPA Order, Dkt. No. 105 at 12. Attorney Russel Myrick of RDM Legal Group submitted a declaration in support of the Motion for Approval of Attorneys' Fees and Costs and Class Representatives' Service Awards addressing this issue. Dkt. No. 106-5. As set forth in Mr. Myrick's declaration, RDM Legal Group, of which Mr. Myrick is the founding partner, has handled many class action cases in both state and federal court, including other litigation involving truck drivers. *Id.* at ¶ 12. RDM Legal Group recorded over 167 hours and incurred over $11,000 in costs prosecuting the *Barker* action, both of which facts support the conclusion that RDM Legal Group has heretofore adequately represented and protected the interests of the Class. *Id.* at ¶¶ 14-15. Additionally, RDM Legal Group has no conflicts of interest with the Class or the Class Representatives, and Mr. Myrick avers that he will "continue to vigorously represent the interests of the Class." *Id.* at ¶ 18. In conclusion, given the declaration of Mr. Myrick, the Court can and should find that he and RDM Legal Group are adequate Class Counsel and will protect the interests of the Class.

Accordingly, Plaintiffs now request that the Court confirm its previous certification of the Settlement Class.

**B. Final Approval.**

A class action may only be settled with court approval. Fed. R. Civ. P. 23(e). Where, as here, the proposed settlement will bind the Class Members (by, e.g., releasing their claims), the Court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This standard balances the public policy favoring settlement of complex class action litigation, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008), with the due process interests of absent class members, *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Rule 23(e)(2) of the Federal Rules of Civil Procedure now lists the factors to be considered in settlement approval, if the proposal will bind class members. Fed. R. Civ. P 23(e)(2). Those factors are "whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id*.

### 1. The class representatives and class counsel have adequately represented the class.

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

Class Counsel have adequately represented the Class. As a preliminary matter, Class Counsel are no strangers to class action litigation. Class Counsel have been lead or co-lead counsel in hundreds of class action cases in California and throughout the United States, and was counsel of record in over thirty reported appellate cases. Markham Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-2, ¶¶ 11-17; Hefelfinger Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-3, ¶ 19; Myrick Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-5, ¶¶ 11-13; Strauss Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-4, ¶¶ 4-9. Thus, Class Counsel are well-suited to ensure their representation of the Class is more than adequate.

As evidence of the adequacy of their representation, Class Counsel have engaged in extensive formal and informal discovery in both the *Fritsch* and *Barker* actions. Such

discovery included multiple sets of written discovery, depositions of the named plaintiffs, depositions of corporate representative witnesses, production of tens of thousands of pages of documents, production of all payroll data for each class member, mediation production of data for sampling approximately 20 percent of the class. Hefelfinger Decl. at ¶ 10; Declaration of David R. Markham in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Markham Decl.") at ¶¶ 3-6. Class Counsel also investigated their claims by communicating directly with Class Members. Hefelfinger Decl. at ¶ 10. The formal and informal discovery conducted by Class Counsel gave them the information they needed to prepare for the mediation, which of course led to the Settlement. *Id.*

The Class Representatives have also adequately represented the Class. Plaintiffs attended multiple mediation sessions, gave deposition testimony, assisted with discovery requests and responses, provided insight to Class Counsel, and never had any interests that were antagonistic to or in conflict with the other Class Members. Fritsch Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-7, ¶¶ 16-21; Barker Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-8, ¶¶ 11-14; Bachman Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-9, ¶¶ 12-15; Yingling Declaration in Support of Motion for Approval of Attorneys' Fees, Dkt. No. 106-10, ¶¶ 11-14.

For these reasons, the Class Representatives and Class Counsel have adequately represented the Class, as required by Rule 23(e)(2)(A).

## 2. The proposed settlement was negotiated at arm's length.

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[ ], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on

whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; *accord Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

Plaintiffs are represented by experienced attorneys, as discussed above. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."). The Settlement is also the result of the Parties' participation in three mediations, including a final, full-day mediation with Mark Rudy, Esq. Hefelfinger Decl. at ¶ 14. Hence, the Settlement was negotiated at arm's length and was noncollusive.

### 3. The relief provided for the Class is adequate.

The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

### a. Costs, risks, and delay of trial and appeal.

"A[ ] central concern [when evaluating a proposed class action settlement] ... relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. In evaluating this factor, the Court "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case[.]" *Ochinero v. Ladera Lending, Inc.*, No. SACV191136JVSADSX, 2021 WL 4460334, at *5 (C.D. Cal. July 19, 2021) (quoting *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130 (2008)). "In the context of a settlement ... the test is not the

maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Ochinero*, 2021 WL4460334, at *5 (quoting *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250 (2001)).

Here, the Court has already assessed the strength of Plaintiffs' case and future risk. As the Court has noted, "It is likely this case would require extensive continued litigation if a settlement were not approved." MPA Order, Dkt. No. 105 at 17. In light of this risk, the average recovery for each Class Member is approximately $1,258. *Id.* at 18. The Court concluded, "Given the relative strength of Plaintiffs' claims, and the risks and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable." *Id.* Nothing has occurred to change the Court's conclusion. *See* Hefelfinger Decl. at ¶¶ 16-18 (identifying various risks of litigation, including potential preemption issues). Plaintiffs urge the Court to conclude once again that the Settlement is reasonable considering the cost and risk involved in pursuing a litigated outcome.

### b. Effectiveness of proposed method of relief distribution.

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claim's processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

The claims process does not require that the members take any action to be paid. Settlement at ¶¶ VII.5(f) (Class Members who do not timely opt out of the Settlement are bound by its terms). Claims will be based on information that Swift provides to the Claims Administrator, including the identity of the eligible members, the number of workweeks each member worked during the Class Period, and the number of pay periods

each member worked during the PAGA Period. *Id.* at ¶¶ VII.5(a), (b), (d).  Thus, this process is not unduly demanding.

Because the proposed method of distributing relief to the Class is based on each member's personal records (including social security number) and requires no action from participating class members, the method effectively distributes relief to members of the Settlement Class.  *See Ochinero*, 2021 WL4460334, at *6.

### c.  Terms of proposed award of attorneys' fees.

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c).

Class Counsel seek $275,000 in attorneys' fees, which is one-third of the Gross Settlement Amount.  Settlement at ¶ VII.3(a).  Swift shall fund the Settlement within 20 business days after the Effective Date (i.e., after the Court's order granting final approval is no longer subject to challenge by appeal), after which time the Claims Administrator has seven days to pay the Court-awarded attorneys' fees.  *Id.* at ¶¶ I.Q, VII.5(i), VII.5(j).

As explained in the separately filed motion for attorneys' fees, the requested amount in attorneys' fees is reasonable.  *See Ochinero*, 2021 WL4460334, at *6 (finding that a proposed settlement seeking 33.33% in fees to be reasonable for the purposes of Rule 23(e)(2)(c)).

### d.  Agreement identification requirement.

The Court must also evaluate any agreement made in connection with the proposed Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Here, there is no further agreement made in connection with the Settlement, meaning that this condition is satisfied.

For the reasons stated above, the form of relief is adequate.

### 4.  Class Members are treated equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes

appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Here, each member of the Settlement Class will receive relief proportional to the number of weeks that he or she worked for Swift during the Class Period, as compared with the overall number of eligible weeks worked by members of the Settlement Class; distribution of the PAGA monies uses the same formula, except that it is calculated pro rata based on the number of pay periods worked. Settlement at ¶¶ VII.5(a), (b), (d). The Settlement will therefore treat members of the Settlement Class equitably. *Ochinero*, 2021 WL4460334, at *7.

Based on the foregoing, Plaintiffs urge the Court to find that each of the Rule 23(e) factors has been met, which in turn favors approval of the Settlement.

## C. Questions raised in Order granting preliminary approval.

In its Order granting preliminary approval, the Court expressed its intention of revisiting some issues at final approval, and they are discussed below.

### 1. There are no obvious deficiencies in the Settlement.

The Court noted that there are no obvious deficiencies on the face of the Settlement, but that it was concerned about the request of attorneys' fees of up to one-third of the settlement amount. MPA Order at 16. Plaintiffs have filed a separate Motion for Approval of Attorneys' Fees and Costs, Dkt. No. 106, which explains the basis for their request of fees in excess of the benchmark of 25 percent. Plaintiffs will not restate herein the entire substance of that motion, but three points are worth mentioning.

First, fee awards in the Ninth Circuit can and regularly do exceed the benchmark, and awards of 33 percent may be appropriate in cases where the settlement is below $10 million. *See Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark). "More particularly, a review of California cases in [California district courts] reveals that courts usually award

attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun under $10 million." *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010); *see Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five then-recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30 to 33%); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, * 8 (S.D. Cal. June 1, 2010) (approving attorney fee award of 33.33% of the common fund and holding that award was similar to awards in three other wage and hour class action cases where fees ranged from 30.3% to 40%); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007).   Indeed, this Court recently approved fees of one-third of a $485,000 settlement of a wage-and-hour matter.  *Ochinero*, 2021 WL 4460334, at *8.

Second, the lodestar cross-check of Plaintiffs' requested fee award strongly supports an award in excess of the benchmark.  Plaintiffs' counsel have incurred fees over three times greater than the percentage fee they seek.  Indeed, a fee award of one-third of the settlement would require a *negative* multiplier of 0.28.  Dkt. No. 106-1 at 7.

Third, Plaintiffs filed their fee motion before filing the instant motion for final approval, and yet no Class Member has filed an objection or even opted out of the settlement.  These facts strongly support the conclusion that a fee award in excess of the benchmark is warranted.  Given that conclusion, the requested fee award does not present a deficiency that would warrant the denial of this motion for final approval.

## 2.  There is no preferential treatment to class representatives.

The Court also noted in its Order granting preliminary approval that it had concerns about the $10,000 service awards for the named plaintiffs.  MPA Order at 16.  In conjunction with their fee motion, Plaintiffs also filed their motion for approval of the Class Representatives' service enhancement payments.  In that portion of the motion, Plaintiffs discuss why the $10,000 service awards are appropriate.  To summarize, the requested awards are appropriate because the named plaintiffs litigated their cases for over six years, subjected themselves to public scrutiny, and took on the risk of bearing

litigation costs. Dkt. No. 106-1 at 16; *see Ochinero*, 2021 WL 4460334, at \*8 (approving service award of $12,500 to Class Representative). Moreover, these named plaintiffs will be releasing their claims with a general release, whereas the Class Members will only release their wage-and-hour claims. Settlement at ¶¶ VII.2(a), 3(d). These arguments highlight that there is no preferential treatment to the class representatives. What is more, the Settlement is not contingent in any respect upon Plaintiffs' receipt of their requested $10,000 service awards. Settlement at ¶ VII.3(d); *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (2013). The requested awards are *up* to $10,000, so the Court may award less than the full requested amount. Settlement at ¶ VII.3(d). Finally, no Class Member has objected to the requested service awards. CPT Decl. at ¶ 5. For these reasons, Plaintiffs urge the Court to find that there is no preferential treatment to the class representatives that would warrant the denial of this motion.

### 3. The experience and views of counsel weigh in favor of approval.

The Court analyzed the experience and views of each of Plaintiffs' counsel, except for Mr. Myrick of RDM Legal Group. MPA Order at 18-19. Mr. Myrick has the requisite experience to adequately represent the Class. Myrick Decl., Dkt. No. 106-5 at ¶¶ 12-18. As with all other counsel, Mr. Myrick recommends the approval of the Settlement. *Id.* at ¶ 19. With this information from Mr. Myrick, the Court can now conclude that Class Counsel, and each of them, have demonstrated the ability to prosecute vigorously on behalf of the Class Members.

### D. The PAGA portion of the Settlement should be approved.

Plaintiffs request that the Court approve the PAGA portion of the Settlement, as required by California law. The California legislature enacted PAGA "to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009); *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1121 (9th Cir. 2014) ("If the California Labor and Workforce Development Agency ('LWDA') declines to

investigate an alleged labor law violation or issue a citation, an aggrieved employee may commence a PAGA action against an employer 'personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations.' "). An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." Cal. Lab. Code § 2699(c).

"An employee plaintiff suing [under PAGA] does so as the proxy or agent of the state's labor law enforcement agencies." *Arias*, 46 Cal. 4th at 986. An action for civil penalties under PAGA "is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Id.* (quoting *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17 (1977)). "Because an aggrieved employee's action under [PAGA] functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.* "Of the civil penalties recovered, 75 percent goes to the California Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' " *Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073 MHP, 2010 WL 1340777, at *1 (N.D. Cal. Apr. 2, 2010) (quoting Cal. Lab. Code § 2699(i)).

Further, section 2699(l)(2) states, "[t]he superior court shall review and approve any settlement of any civil action filed pursuant to this part. The proposed settlement shall be submitted to the agency at the same time that it is submitted to the court." Cal. Lab. Code § 2699(l)(2). "A court has discretion to approve the settlement of PAGA claims if the settlement would be 'fair.' " *Junhee Lee v. Esra Jung*, No. 15-cv-01529-HRL, 2016 U.S. Dist. LEXIS 136162, at *2 (N.D. Cal. Sep. 29, 2016).

The LWDA has suggested some guidelines for approving PAGA claims, which have been cited with approval by a number of courts:

> when a PAGA claim is settled, the relief provided for under the
> PAGA [should] be genuine and meaningful, consistent with the

> underlying purpose of the statute to benefit the public and, in the
> context of a class action, the court [should] evaluate whether the
> settlement meets the standards of being fundamentally fair,
> reasonable, and adequate with reference to the public policies
> underlying the PAGA.

*Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (internal quotations and citations omitted); *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016). In doing so, the Court may "consider factors such as the merits of the action, the maximum recovery the plaintiff could obtain if the merits were decided in his favor, and 'how and why [the] parties arrived at the settlement amount.' " *Hollis v. Weatherford US LP*, No. 1:16-CV-00252-JLT, 2017 WL 131994, at *2 (E.D. Cal. Jan. 12, 2017).

As other courts in this district have found, however, "the Act is surprisingly short on specifics," and neither the California legislature, the LWDA, nor California courts have identified "the appropriate standard for approval of such a settlement." *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1075 (C.D. Cal. 2017). As a result, "[f]ederal district courts, sitting in diversity, have often been left to their own devices in this area of great importance to the citizens of California." *Id.* at 1075-76.

Applying these varied factors here leads to the conclusion that the agreed-upon PAGA allocation is appropriate and should be approved.

The parties arrived at the PAGA allocation of $50,000 for a number of reasons. First, although the PAGA statute sets forth the amount of penalties that may be awarded for individual Labor Code violations, the Court has discretion to "award a lesser amount than the maximum civil penalty amount specified by [the PAGA] if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Lab. Code § 2699(e)(2); *see Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) ("if the case went to judgment and if the drivers prevailed, the Court would very likely reduce the award of PAGA

penalties by a substantial amount."). Thus, even if Plaintiffs were to prevail on all of their claims for PAGA penalties, it is possible the Court would substantially reduce the penalties award. Plaintiffs factored in this risk of substantial reduction in their agreed-to PAGA allocation. Hefelfinger Declaration in Support of Motion for Preliminary Approval, Dkt. No. 100-1, at ¶ 18.

Second, Plaintiffs chose to compromise their PAGA penalties in light of the risks of continued litigation. *Id.* Plaintiffs' PAGA claims are derivative of their California Labor Code claims. Fourth Amended Complaint, Dkt. No. 92, at 23-27. The merits of their Labor Code claims, therefore, are the same merits of their PAGA claims. The Court has already concluded that Plaintiffs' underlying claims are "fairly strong and well-founded," but that it is likely this case "would require extensive continued litigation if a settlement were not approved." MPA Order at 17. This same logic applies with equal force to Plaintiffs' derivative PAGA claims, so a negotiated settlement of the PAGA claims that results in a monetary recovery for the PAGA members is preferable to protracted litigation that could result in a defense verdict. Thus, a PAGA allocation of $50,000 seemed reasonable.

Finally, the PAGA allocation is appropriate, as measured as a percentage of the gross settlement amount. Plaintiffs estimate that the maximum theoretical PAGA civil penalty amount would be in the range of $1 million to $2 million. Hefelfinger Decl. at ¶ 13. While it is true that the PAGA portion of the settlement is a small fraction of the total potential liability, California courts routinely approve class action settlements with small PAGA allocations compared to the maximum possible PAGA recovery. *See Contreras v. Worldwide Flight Servs., Inc.*, No. CV 18-6036 PSG (SSX), 2020 WL 2083017, at *10 (C.D. Cal. Apr. 1, 2020). Rather than evaluate the PAGA allocation against the total potential PAGA penalties, courts tend to look instead at the PAGA allocation as a percentage of the gross settlement. *Id.* Using this approach, courts approve PAGA allocations in the range of between zero to two percent of the gross settlement amount. *Id.*; *see, e.g., In re M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL

995864, at *1 (S.D. Cal. Apr. 13, 2009) (approving PAGA settlement of 2 percent); *Hopson v. Hanesbrands, Inc.*, No. CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA settlement of 0.3 percent); *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 17-853, 2020 WL 1492672, at *5 (E.D. Cal. Mar. 27, 2020) (approving PAGA penalty equal to approximately 2 percent of gross settlement). Here, the PAGA allocation that will be distributed to the LWDA ($37,500) represents approximately 4.3 percent of the Gross Settlement Amount. This agreed-upon allocation to the LWDA, because it is higher than the usual range of zero to two percent of the gross settlement, does not raise concerns that Plaintiff is skirting the "special responsibility to [his] fellow aggrieved workers" or using the PAGA claim "merely as a bargaining chip, wherein the rights of individuals ... may be waived for little additional consideration in order to induce the employer to agree to a settlement." *O'Connor*, 201 F. Supp. 3d at 1134. Thus, Plaintiffs urge the Court to approve the requested PAGA allocation.

### E. Response of the Class.

The response of the Class favors approval of the Settlement in every respect. The Class had until December 6, 2021 to object to the Settlement. Plaintiffs filed the motion for attorneys' fees and costs on November 22, 2021. Dkt. No. 106. The motion will be heard at the same time as the instant motion for final approval. As of the date of the filing of this motion, zero objections to the final settlement have been filed with the Court. A low opt-out rate suggests the support of Class Members and counsels in favor of approval. *See Nat'l Coal. of Ass'ns of 7-Eleven Franchisees v. Southland Corp.*, 210 F.3d 384 (9th Cir. 2000) (finding that a .6% opt-out rate suggests "that the settlement was a favorable one"). Here, where no one opted out or objected, the reaction of the Class Members even more strongly favors approval of the Settlement.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court grant their motion for final approval of the instant settlement and enter the [proposed] order filed as Dkt. No. 106-11 and /////

the [proposed] judgment filed as Dkt. No. 106-12.

Date:  December 3, 2021          **STRAUSS & STRAUSS, APC**

By: */s/ Michael A. Strauss*
        Michael A. Strauss
        Attorneys for Plaintiffs and the Class