JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Grant Fritsch, <br><br> Plaintiff, <br><br> v. <br><br> Swift Transportation Co. of Arizona, LLC, et al. <br><br> Defendants. | Case No. 5:17-cv-02226-VAP-KKx <br><br> **Order GRANTING Motion for Final Approval of Class and PAGA Settlement and Motion for Approval of Attorneys' Fees (Dkt. 107, 106)** |

Before the Court is Plaintiffs' Grant Fritsch, Bill Barker, Tab Bachman, and William Yingling's ("Plaintiffs") Motion for Final Approval of Class and PAGA Settlement, filed on December 03, 2021, (Dkt. 107), and Motion for Approval of Attorneys' Fees and Costs and Class Representatives' Service Awards, filed on November 22, 2021, (Dkt. 106).

After considering all the papers filed in support of, and in opposition to, the Motions, the Court **GRANTS** the Motions.

## I.     BACKGROUND

### A.    Procedural History

The parties are familiar with the background of this dispute.  In short, this proposed class action settlement represents the outcome of a lawsuit pending for six years, alleging violations of employment and labor laws.

The Class, as defined in the Settlement Agreement, would include "all persons employed by Defendant as yard hostlers in California at any time during the Settlement Class Period, or December 7, 2011 through the date preliminary approval is granted." (Dkt. 105, at 2).

The parties participated in three mediation sessions in October 2017, April 2018, and December 2020. (Dkt. 107, at 2). Following the December 2020 mediation, the parties reached a Settlement Agreement. (*Id.*). The Court granted Preliminary Approval of the Class Action Settlement on October 5, 2021 (Dkt. 105). Plaintiffs now move for Final Approval of Class and PAGA Settlement and for approval of Attorneys' Fees, Costs, and Class Representatives' Service Awards.

**B.  Settlement Terms**

The parties prepared a joint settlement agreement ("Settlement Agreement"). (Dkt. 100-1, at 4). The Settlement Agreement establishes a maximum, non-reversionary settlement fund of $825,000, which includes:

> (1) settlement payments to the hostlers; (2) attorneys' fees of up to $275,000 (one-third of the Gross Settlement Amount) to be divided by all proposed class counsel firms; (3) litigation expenses of up to $60,000; (4) class representative service payments to the Named Plaintiffs in an amount not to exceed $10,000 each, or $40,000 in the aggregate; (5) a PAGA allocation of $50,000, with 75% of that amount to be paid to the California Labor and Workforce Development Agency and the remaining 25% paid to the

2

aggrieved employees, and (6) up to $10,000 to the third-party settlement administrator, CPT group.  (Motion, at 1; Agmt. § 7 (3)).

Any subsequent reductions to the fees or costs outlined in the agreement will increase the funds available for distribution to the Settlement Class members.  (Motion, at 1).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008).  The Court's review of the settlement is meant to be "extremely limited" and should consider the settlement as a whole.  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).

A court must engage in a two-step process to approve a proposed class action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Second, after notice is given to class members, the Court must determine whether final approval is warranted.  (*Id*.)  A court should approve a

settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement.  *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026.  "In addition, the settlement may not be the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, No. C-96-3008-DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d 1234 (9th Cir. 1998).

## III. DISCUSSION

### A. Fairness, Adequacy, and Reasonableness of the Settlement

#### 1. Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027.

As previously found by this Court, the parties engaged in arm's length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel. Additionally, the Settlement Agreement was reached after six years of extensive litigation in state and federal courts in two different wage and hour class actions, *Fritsch v. Swift Transportation of Arizona* (Case No. 5:17-cv-02226 VAP (KKx); C.D. Cal.), and *Barker et al. v. Swift Transp. Co. of Arizona* (Case No. 2:16-cv-01532-TLN (CKDx); E.D. Cal.). The parties in the *Fritsch* and *Barker* actions attended three mediation sessions before reaching a global settlement. (Dkt. 107, at 7). The Settlement Agreement is therefore presumptively the product of a non-collusive, arms-length negotiation. *See Roe v. SFBSC Management, LLC*, No. 14-cv-03616-LB, 2017 WL 4073809, at *9 (N.D. Cal. Sept. 14, 2017) (holding that a settlement that is the product of an arms-length negotiation "conducted by capable and experienced counsel" is presumed to be fair and reasonable); *Satchell v. Fed. ExpressCorp.*, No. 03-cv-2878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

At the Preliminary Approval stage, the Court noted that it had insufficient information to determine if Counsel Russel Myrick of RDM Legal Group adequately represented or protected the interests of the Class. (Dkt. 105, at 12). The Court explained that it would revisit this issue at the final approval hearing. (*Id.*). Counsel Russel Myrick has submitted a declaration in support of the Motion for Attorneys' Fees which addresses the Court's concerns, explaining that Myrick is the founding partner of RDM Legal Group, he has handled many class action employment cases in both state and federal court, and RDM Legal Group recorded over 167 hours and incurred over $11,000 in costs prosecuting this action. (See Dkt. No. 106-5; Dkt. 107, at 6). The declaration also notes that RDM Legal Group has no conflicts of interest with the Class or the Class Representatives. (Dkt. No. 106-5, Dkt. 107, at 6). The Court is therefore satisfied that Russel Myrick of RDM Legal Group has adequately represented the Class.

This factor weighs in favor of approval.

2.  Strength of Plaintiff's Case and Future Risk

Class Counsel maintains that the Settlement Agreement is more than reasonable in light of the litigation risks that Plaintiffs and Class Members would face if the case were not settled. As the Court previously noted, Plaintiffs' claims appear fairly strong, but Defendant has contested them in state and federal court for the past six years. (Dkt. 105, at 17). The Court determined that the case would likely require extensive continued litigation if a settlement were not approved. (*Id.*).

Given the relative strength of Plaintiffs' claims, and the risks and costs associated with future complex litigation, the Settlement Agreement's terms appear to be reasonable. Hence, these factors favor approval.

### 3. Amount Offered in the Settlement

As noted above, the Settlement Agreement established a settlement fund of $825,000. (Dkt. 107, at 3). "[T]he average recovery for each Class Member is approximately $1,258." (*Id.* at 10.).

For a settlement to be fair and adequate, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). As discussed in more detail below, the Court finds that the amount offered in settlement weighs in favor of final approval.

### 4. Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

As noted, this case has an extensive procedural history. The parties from two wage and hour class actions, *Fritsch v. Swift Transportation of Arizona* and *Barker et al. v. Swift Transp. Co. of Arizona*, litigated diligently for six years and attended three mediation sessions before negotiating the present Settlement Agreement. Moreover, Plaintiffs have had access to

considerable discovery from Defendant, including employee-specific pay and time data for all Class members. (Dkt. 105, at 15). Class Counsel explains that its discovery in this case included, "multiple sets of written discovery, depositions of the named plaintiffs, depositions of corporate representative witnesses, production of tens of thousands of pages of documents, production of all payroll data for each class member, [and] mediation production of data for sampling approximately 20 percent of the class." Accordingly, the Court finds this factor weighs in favor of approval. *See Linney*, 151 F.3d at 1239.

### 5. Experience and Views of Counsel

Class Counsel has ample experience litigating class actions similar to this case and hence has demonstrated the ability to prosecute vigorously on behalf of the class members. *See* Dkts. 106-2, 106-3, 106-4, 106-5. Accordingly, the Court finds this factor weighs in favor of approval.

### 6. Presence of a Governmental Participant

As there is no governmental participant in this action, this factor is irrelevant for the purposes of final approval.

### 7. The Reaction of The Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Following preliminary approval of the settlement by the Court, the Settlement Administrator distributed the approved class notice to the Class Members. (Dkt. 107, at 1). During the allotted response period, the Settlement Administrator received no objections or requests for exclusion. (*Id.* at 4).

Given the absence of any objections or requests for exclusion, the Class response is favorable overall. Accordingly, this factor also weighs in favor of approval.

### 8. Balancing the Factors

As all the relevant factors favor approval, the Court finds that the proposed Settlement Agreement is fair, reasonable, and adequate and **GRANTS** final approval of the Settlement Agreement.

### B. Plaintiff's Motion for Attorneys' Fees

When evaluating attorneys' fees, the Ninth Circuit holds "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)). Here, Plaintiff seeks to employ the lodestar method and the percentage-of-the-fund cross-check, and requests $275,000, i.e., 33.3% of the Gross Settlement Amount, on behalf of Class Counsel. (Dkt. 106, at 1). Rather than adopting Class

Counsel's suggestion, the Court instead will calculate the percentage-of-the-fund first and then perform a lodestar cross-check.

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases. *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50). The Court addresses these factors below:

1. Results Achieved

Class Counsel has shown that it obtained a good result. Counsel has shown that the maximum potential liability of Plaintiffs' direct non-PAGA claims is approximately $2,700,000, and that the Settlement Amount of $825,000 represents approximately 30.5% of that amount. (Dkt. 106, at 8). The Court agrees with Plaintiffs that this is an "excellent result beyond the range of recoveries approved by other district courts in California." (*Id.*). The Court also agrees that "[t]his Settlement provides substantial relief to all Class Members without further delay, and without the risks associated with certification, trial, and appeal." (*Id.*). In addition, Counsel engaged in considerable motion practice for this matter, including litigating an appeal

before the Ninth Circuit on the issue of whether the case should be remanded to state court.  (Dkt. 28).  Accordingly, this factor weighs in favor of approving the proposed attorneys' fees award.

### 2. Risks of Litigation

Class Counsel assumed a considerable degree of risk by representing Plaintiffs.  The litigation lasted six years, and during that time, Class Counsel expended resources and time conducting a thorough investigation of the factual and legal issues.  Class Counsel has also shown that Defendant asserted defenses that created a risk that the Class would receive no recovery, in addition to the risk that Class claims would not be certified at all.  (Dkt. 106, at 16).  The risks of this litigation therefore justify an upward departure from the 25% benchmark.  *Compare Monterrubio*, 291 F.R.D. at 456–57 (finding case was not "extremely risky" although it was questionable whether the class could be certified, whether the plaintiff could prove an employer's policies violated labor code sections on a "knew or should have known" standard, and whether plaintiff could overcome an "exhaustion defense"), *and Hawthorne v. Umpqua Bank*, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) (holding the risk in a case did not merit an attorneys' fee award of 33% even though the class counsel "expended a significant amount of time and effort litigating this case over the past three years and undertook a major risk by taking it on a contingency basis."), *with Vizcaino*, 290 F.3d at 1048 (finding case "extremely risky" when, among other factors, plaintiffs lost twice in district court and there was absence of supporting precedent).

### 3. Contingent Nature of the Fees and Burdens Carried

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. Thus, whether Class Counsel has taken the case on a contingency fee basis must be considered when deciding to vary from the 25% benchmark. *Monterrubio*, 291 F.R.D. at 457. Here, Class Counsel took this case on a contingency fee basis. Thus, this factor weighs slightly in favor of an upward deviation from the benchmark.

### 4. Burdens Carried

Class Counsel has provided information as to the costs in prosecuting this action, which account for $51,384.41. (Dkt. 106, at 11). Class counsel also reports they have spent "over 1,827 hours investigating, analyzing, researching, litigating, and negotiating a favorable resolution of this case . . . ." (*Id.*). The Court finds these expenses and hours reasonable and substantially burdensome, so this factor weighs in favor of approval.

### 5. Skill and Quality of the Work

Class Counsel are experienced and skilled litigators who have successfully litigated many other class action employment cases. *See* Dkts. 106-2, 106-3, 106-4, 106-5. As discussed, they achieved a favorable result in this case. Their work merits an upward departure from the 25% benchmark.

### 6. Awards Made in Similar Cases

As noted above, 25% is the Ninth Circuit's "benchmark award for attorney[s'] fees." *Hanlon*, 150 F.3d at 1029. Class Counsel request the Court enhance the award, citing to cases in which courts have awarded attorneys' fees at or above one third of the total settlement fund. (*See* Dkt. 106, at 12). Given the quality of the work performed by Class Counsel, and the contingent nature of the fees, this factor weighs in favor of a departure from the 25% benchmark.

### 7. Lodestar Cross-Check

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v.*

*Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 (1984)).

Here, Class Counsel report that its lodestar is $955,417.50, based on a total of approximately 550.8 hours from Palay & Hefelfinger, APC at hourly rates of $625.00 to $800.00 for each attorney on the matter and $15,767.10 in costs; 982.30 hours from the Markham Law Firm, at hourly rates of $400.00 to $815.00 for each attorney on the matter and $175.00 for paralegals, and costs of $22,449.78; 139.5 hours from Strauss & Strauss, APC at hourly rates of $400.00 to $670.00 for each attorney on the matter and $1,724.32 in costs; and 167.2 hours from RDM Legal Group, at hourly rates of $650.00 for the attorney on the matter and $11,443.21 in costs. *See* Dkts. 106-2, 106-3, 106-4, 106-5. The lodestar of Palay Hefelfinger, APC is $356,307.50; for Markham Law Firm it is $415,407.50; for Strauss & Strauss, APC it is $75,022.50 and for the RDM Legal Group it is $108,680.00. (Dkt. 106, at 1). These figures total a lodestar fee of $955,417.50 and $51,384.41 in litigation costs. (*Id.* at 2).

After a review of Class Counsels' declarations, the Court concludes that the lodestar amount is reasonable considering the work performed and the prevailing rates in the community for attorneys of comparable skill, experience and reputation. Counsel has provided evidence showing that its rates have recently been approved by other courts in similar cases. Moreover, each law firm has provided detailed records regarding the number of hours it spent on this case and the costs incurred due to

1  litigation.  Moreover, a total of $1,827.40 hours over six years of litigation
2  appears to the Court to be eminently reasonable.  (Dkt. 106, at 6).

4  The fee Class Counsel seeks reflects a negative multiplier of .28 on
5  the lodestar, which is reasonable for a complex class action case.  *See*
6  *Milburn v. PetSmart, Inc*., No. 1:18-cv-00535, 2019 U.S. Dist. LEXIS
7  187530, at *29 (E.D. Cal. Oct. 28, 2019) (awarding 33.3% of common fund
8  where lodestar amounted to a negative multiplier); *see Hopkins v. Stryker*
9  *Sales Corp*., 11CV2786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6,
10 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in
11 complex class action cases.").  In the recent $50 million settlement in
12 *Spann*, Judge Olguin held that a multiplier of 3.07 was "well within the range
13 of reasonable multipliers."  *Spann v. J.C. Penney Corp*., 211 F. Supp. 3d
14 1244, 1265 (C.D. Cal. 2016); *see also Vizcaino*, 290 F.3d at 1052–1054
15 (surveying multipliers in 23 class action suits and recognizing that courts
16 applied multipliers of 1.0 to 4.0 in 83% of surveyed cases); *Parkinson v.*
17 *Hyundai Motor Am*., 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing
18 that "multipliers may range from 1.2 to 4 or even higher").  Therefore, the
19 Court concludes that the lodestar cross-check justifies Class Counsel's
20 requested fee.

22  8.  Conclusion
23  In sum, all of the *Vizcaino* factors weigh in favor of a departure from
24  the 25% attorneys' fee award benchmark.  Class Counsel's lodestar
25  calculation figures also prove the fee to be reasonable.  The Court therefore

finds that the facts of this case support a departure from the benchmark from 25% to 33%.

Accordingly, the Court **GRANTS** the application for attorneys' fees equal to 33% of the settlement fund ($275,000).

### C. Costs

Class Counsel seeks $51,384.41 in litigation costs. (Dkt. 106, at 2). Class Counsel have each submitted a detailed accounting as to those expenses, which the Court finds to be reasonable. See Dkts. 106-2, 106-3, 106-4, 106-5. Settlement Administration costs for this matter reportedly total $10,000. (Dkt. 106, at 2). The Court accepts the stated fees and costs, and finds that reimbursement of those expenses is reasonable. The Court therefore **APPROVES** the reimbursements in the amount sought.

### D. Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the

interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Class Counsel requests a service award of $10,000.00 to each Class Representative. (Dkt. 106, at 16). Counsel notes that an enhanced service award is justified based on:

> (1) the significant amount of time Plaintiffs have spent on behalf of the Class for the six-year duration of this litigation; (2) the fact that Plaintiffs have made their private employment information public, and will bear the stigma of bringing a class action wage dispute against an employer; and (3) the fact that Plaintiffs subjected themselves to the risks associated with litigation, including the risk of being liable for Defendant's litigation costs. (Dkt. 106, at 16).

Class Counsel also notes that Plaintiffs participated in lengthy interviews, sat for depositions, and participated in three full-day mediation sessions. (*Id.* at 17). Moreover, Counsel notes that two of the Plaintiffs had to travel from out-of-state to participate in depositions and mediations, and therefore lost thousands of dollars in wages. (*Id.*).

The Court agrees with Class Counsel that Plaintiffs undertook significant burdens to serve as Class Representatives, especially given the lengthy timeline of the case, the extensive amount of discovery conducted, and the risk they would be held liable for Defendant's litigation costs. The Court approves an award of a total of $10,000.00 for each named Plaintiff.

### IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion for Final Approval of Class Action Settlement and **GRANTS** the Motion for Attorneys' Fees. It awards attorneys' fees in the amount of $275,000 and costs in the amount of $51,384.41, costs to the Settlement Administrator in the amount of $10,000, and a Service Award to Plaintiffs of $10,000 each.

**IT IS SO ORDERED.**

Dated:    1/4/22

Virginia A. Phillips
United States District Judge